UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

XAVIER GRILLETTA and RANDY                  CIVIL ACTION
LAUMAN

VERSUS                                       NO: 06-4333

LEXINGTON INSURANCE COMPANY

                                             SECTION: "J" (4)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for trial before the Court, sitting without a jury, on August 23-24, 2007.  The Court now issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

Plaintiffs, Xavier Grilletta, Jr. and Randy Lauman are the owners of the property located at 25694 Chef Menteur Highway in New Orleans, Louisiana ("The Property").  At the time Hurricane Katrina came ashore on August 29, 2005 Plaintiffs had in full force and effect a contract of insurance providing coverage for damage caused by wind and hail on the property through Defendant, Lexington Insurance Company ("Defendant" or "Lexington").  The insurance contract provided up to $400,000 in coverage for the

dwelling structure    ("Coverage A"), $40,000 in coverage for
other structures on the property, namely a boathouse ("Coverage
B"), $200,000 in coverage for contents ("Coverage C"), and
$40,000 in coverage for additional living expenses ("Coverage
D").  The dwelling was raised on pilings and had a base flood
elevation of 16.22 feet above mean sea level.  The property was
completely destroyed by Hurricane Katrina.  On or about September
1, 2005, Plaintiffs reported the loss of the property to
Lexington.  On September 17, 2005 Lexington assigned the claim to
Wayne Wagner of Brush Country Claims.  Wayne Wagner began work on
the claim, and inspected the property on September 27, 2005.  Mr.
Wagner requested additional information from Plaintiffs,
including a contents list and a drawing of the property.  On or
about November 7, 2005, Mr. Wagner received all requested
information and began work on submitting his report to Lexington.
Mr. Wagner's final report was submitted to his superiors on or
about November 12, 2005 and was forwarded to Lexington on or
about November 13, 2005.  Mr. Wagner was of the opinion that wind
caused the destruction of the property and recommended payment of
policy limits for the dwelling and additional payment for
contents.

        Lexington took no action on the claim until January 26,
2006, when it decided to hire an engineering company to prepare a

cause and origin report.  Plaintiffs were not informed of the
request for an engineering report until at least February 18,
2006.  Lexington retained Halliwell Engineering Services
("Halliwell") to perform a damage causation analysis for the
property.  Halliwell submitted its initial report to Lexington on
or about April 18, 2006.  That report indicated that the
proximate cause of the destruction of the property was storm
surge.  However, the April 18th report also indicated that wind
damage to the roof could have occurred prior to any flood or
storm surge damage to the property.  For some reason, subsequent
reports deleted reference to wind damaging the roof of the
property.  Plaintiff's engineering expert, Leonard Quick examined
the debris left at the site, as well as other evidence, and
determined that high winds, possibly a tornado or other
mesocyclone activity, caused the destruction of the property.  It
is unclear whether the property was destroyed by flood or wind,
or by some combination thereof.

     Based on the information provided in the April 18th report,
Lexington directed the adjuster to write an estimate for damage
to the second floor of the property covering the roof and
interior of the property.  Lexington tendered a total of
$311,055.38 on June 5, 2006.  Of this amount, $119,380.80 was
paid for loss of contents (Coverage C) and $191,674.58 was paid

for loss of dwelling structure (Coverage A).

There is no dispute that the entire structure is worth substantially more than the $400,000 policy limit.  Nor is there any dispute that the boathouse is worth more than the $40,000 policy limit.  There is also no dispute that the structure is a "total loss."

## **CONCLUSIONS OF LAW**

### Claims for Damage to the Structures

Under Louisiana law, it is the insurer who bears the burden of proving the applicability of any exclusionary clause within an "open peril" insurance policy.  *Blackburn v. Nat'l Union Fire Ins. Co.*, 784 So. 2d 637, 641 (La. 2001); *see also* LA. REV. STAT. ANN. § 22:658.2(B)(2006)("If damage to immovable property is covered, in whole or in part, under the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.").  Apart from the issue of whether plaintiffs' losses are covered losses under the terms of the policy, plaintiffs must prove the amount of their covered damages.  *Broussard v. State Farm Fire & Cas. Co.*, No. 06-8084, 2007 WL 2264535 (E.D. La. May 9, 2007); *Burrell v. Seguros Am. Banamex, S.A.*, 316 So. 2d 177, 179 (La. App. 4 Cir. 1975); COUCH ON INSURANCE § 175:9 (3d ed. 2006).

In this case, Lexington has not met its burden of proving

that flood was the proximate cause of the destruction of the property.  At best, it is ambiguous as to what caused the destruction of the property.  However, Lexington, and Lexington's expert both conceded that wind could have caused <u>some</u> of the damage as evidenced in the April 18th report, and by payments Lexington made to the Plaintiffs.  Further, Lexington has not adequately shown that flood was the cause of the destruction of the property.

There is no dispute that the value of the structure exceeds the policy limit, therefore the plaintiffs have met their burden of proving the value of the covered loss.  Accordingly, the plaintiffs are entitled to full payment under Coverage A of $400,000.  Because Lexington has already tendered $191,674.58 under Coverage A, plaintiffs are entitled to recovery of an additional $208,325.42 under Coverage A.

Similarly Lexington has not met its burden that the boat house was totally destroyed by an excluded peril.  There is no dispute that the boathouse is worth more than the policy limit.  Accordingly, the plaintiffs are entitled to full policy limits under Coverage B in the amount of $40,000.

<u>Claim for Supplemental Contents Coverage and Additional Living Expenses</u>

Plaintiffs also seek additional payments for contents under

5

Coverage C of the insurance policy.  Plaintiffs have never submitted a supplemental claim to Lexington for additional payments.  Louisiana law only requires the payment of a claim after a satisfactory proof of loss.  LA. REV. STAT. ANN. §§ 22:658(A)(1), 22:1220(B)(5).  A proof of loss does not need to be written, but rather can be verbal.  *Riverland Oil Mill, Inc. v. Underwriters for Lloyd's*, 368 So. 2d 156, 163 (La. App. 2 Cir. 1979).  However, the purpose of the proof of loss is to make sure the insurer has adequate knowledge of the loss so that the insurer can properly adjust the claim.  *Carter v. Safeway Ins. Co.*, 859 So. 2d 279, 285 (La. App. 2 Cir. 2003).  Plaintiffs have the burden of proving that an insurer has received satisfactory proof of loss.  *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746 (La. App. 2 Cir. 1999).  Here the plaintiffs have not submitted anything to Lexington which would put Lexington on notice to properly adjust a claim for additional loss of contents.

Additionally, this Court finds that the Plaintiffs have not met their burden of proving the value of a supplemental claim for additional contents.  While Plaintiffs may claim that they believed any supplemental application process would have been fruitless, in fact they never tried to submit the claim. Lexington never received any claim for additional or supplemental

6

contents coverage.  Accordingly, plaintiffs are not entitled to additional payments for contents coverage beyond what they have already received.

Similarly, Plaintiffs are seeking full coverage under Coverage D, for additional living expenses.  Plaintiffs never submitted receipts or indeed even a claim to Lexington under Coverage D.  Additionally, this home was not the primary residence of the Plaintiffs who apparently did receive reimbursement for additional living expenses from the insurance policies on their primary residences.  Accordingly, the plaintiffs are not entitled to recover additional living expenses under Coverage D.

Plaintiffs' Claim for Penalties

"All insurers . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured."  LA. REV. STAT. ANN. § 22:658(A)(1).  A failure to make such payments within thirty days will subject the insurer to penalties in the amount of 25% of the difference between the amount paid and the amount due if such failure is "arbitrary and capricious."  *Id.* § 22:658(B)(1).[1]  An

---

[1]The Louisiana Legislature amended section 658 in 2006, increasing the statutory penalties from 25% to 50%.  The effective date of the amended section was August 15, 2006.  This

insurer's actions are "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense, or is unreasonable or without probable cause.  *La. Maintenance Serv., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1253 (La. 1993); *Wallace v. State Farm Mut. Auto. Ins. Co.*, 821 So. 2d 701, 704 (La. App. 2 Cir. 2002).  Plaintiffs are not entitled to statutory penalties if the insurer has a reasonable basis to defend the claim.  *Husseiny v. Indep. Fire Ins.*, No. 93-1572, 1996 WL 637547 (E.D. La. Nov. 1, 1996)(Porteous, J.); *McGrew v. State Farm Mut. Auto. Ins. Co.*, 385 So. 2d 1276, 1284 (La. App. 3 Cir. 1980).  A serious dispute as to quantum, or the nature of the loss, will preclude a finding that an insurer's failure to pay the claim is arbitrary, capricious or without probable cause.  *Crawler Supply Co., Inc. v. Bituminous Cas. Corp.*, 391 So. 2d 1223, 1225 (La. App. 1 Cir. 1980).

The Court finds that the Plaintiffs are entitled to penalties on part of their claim.  Lexington received a satisfactory proof of loss no later than November 13, 2005, and

---

Court has previously held that the amendment to section 658 is not retroactive.  *See Conlee v. Fireman's Fund Ins. Co.* No. 07-660, 2007 WL 2071860 (E.D. La. July 17, 2007)(Barbier, J.).  However, the amendment should be applied prospectively.  *Id.*  Lexington tendered payment to the Plaintiffs on June 5, 2006, before the effective date of the amendment.  Because the Court also finds that penalties are not appropriate for payments made after June 5, 2006, it is not appropriate to prospectively apply the amended statute.

8

yet took no action on the claim until at the earliest January 26, 2006.  There is no good faith basis on which Lexington could have denied this claim.  It appears from the record that Lexington arbitrarily sat on the claim for over two months before deciding to hire an engineer.  Based on the engineer's cause and origin report, Lexington determined that it owed the Plaintiffs $311,055.38.  However, even this amount was not paid to plaintiffs until June 5, 2006.  Because there was no good faith basis for delaying payment on the claim, this Court finds that penalties are due on the amount ultimately tendered to Plaintiffs on June 5, 2006.  Therefore it will be the judgment of this Court that plaintiffs are entitled to 25% of $311,055.38 ($77,763.84) in penalties.

However, plaintiffs are not entitled to penalties on the additional amount awarded by the Court in today's findings.  The Court finds that Lexington did not act in an arbitrary and capricious matter in refusing to pay the full policy limits of the claim, as there was a reasonable dispute as to the nature of the total loss of the structure.

<u>CONCLUSION</u>

Accordingly, plaintiffs are entitled to recover $208,325.42 in additional payments under Coverage A of the policy; $40,000 in additional payments under Coverage B of the policy; and penalties

in the amount of $77,763.84.  Judgment will be entered in

accordance with these findings and conclusions.

    New Orleans, Louisiana this the 11th day of September, 2007.

 

 

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE